# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WAYNE R. ANDERSEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5639 | **DATE** | *SEPTEMBER 5, 2000* |
| **CASE TITLE** | Nathaniel Lee Williams Jr., #1998-9825560 vs. Dr. Manilla, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ **Enter MEMORANDUM, OPINION AND ORDER:** [Other docket entry]    For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendants' motion for summary judgment [#31] is granted in part and denied in part. Summary judgment is granted in favor of the defendants only to the extent that they are sued in their official capacities. The plaintiff's "motion opposing summary judgment" [#37] is denied as moot. The ruling date previously set for October 26, 2000, is stricken. This case is set for status hearing on September 14, 2000, at 9:00 to discuss the possibility of settlement or, in the alternative, to set a briefing schedule for any renewed motions for summary judgment.

(11) ■ [See accompanying Memorandum Opinion and Order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | date docketed |
| ✓ Docketing to mail notices. | |
| Mail AO 450 form. | docketing deputy initials |
| Copy to judge/magistrate judge. | |
| mjm    courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office    mailing deputy initials |

SEP 1 2 2000

Document Number

40

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL WILLIAMS, #9825560, | ) | |
| | ) | |
| Plaintiff, | ) | Wayne R. Andersen |
| | ) | |
| v. | ) | 98 cv 5639 |
| | ) | |
| DR. MANILLA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**SEP 1 2 2000**

## MEMORANDUM OPINION AND ORDER

The plaintiff, an inmate in the custody of the Cook County Department of
Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The
plaintiff claims that the defendants, health care providers at the Cook County Jail,
violated the plaintiff's constitutional rights by acting with deliberate indifference to his
medical needs.[1] This matter is before the court for consideration of the defendants'
motion for summary judgment. For the reasons stated in this order, the motion must be
denied, except to the extent that the defendants are sued in their official capacities.

Summary judgment "shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with affidavits, if any, show

---

[1]The plaintiff's court access claim was dismissed for failure to state a claim by Minute
Order of December 11, 1998.

1

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

## FACTS

The plaintiff, Nathaniel Lee Williams, is an inmate at the Cook County Correctional Center. (Complaint, p. 2, "Plaintiff(s)" section.) The defendant Romine is a

medical doctor employed by the Cermak Health Facilities of Cook County (i.e., the jail's health care unit). (Complaint, p. 2, "Defendant(s)" section.) The defendant Manilla, also a physician, is the administrator/director of Cermak Hospital. (*Id.*)[2]

The following facts are uncontested for purposes of this motion: On July 15, 1993, about five years prior to his incarceration, the plaintiff underwent a disc and spine operation. (Complaint, Exhibit B, "Physician's Record of Operation.")

The plaintiff was placed in the custody of the Cook County Department of Corrections on April 3, 1998. (Complaint, p.6.[3]) At the time of his arrest, the plaintiff was still taking pain medication; he was also taking blood pressure medication and "nerve pills." (*Id.*) In addition, the plaintiff was in the process of undergoing tests to determine why sores were breaking out over his entire body. (*Id.*)

The plaintiff was given a medical screening the same day he entered the jail. (*Id.*) The [unidentified] doctor agreed to prescribe Motrin, but it was a much weaker pain pill than the plaintiff had been taking on the street. (*Id.*) The doctor refused to prescribe either blood pressure medication or anything to treat the plaintiff's skin condition. (*Id.*)

---

[2] Although the defendants Moore and Lake have joined in the motion for summary judgment, they were already dismissed by Minute Order of December 11, 1998.

[3] The allegations in the complaint are not set forth in separate, numbered paragraphs. Because the complaint is written in narrative form, the court can provide no more than the page numbers for allegations in the complaint.

On April 4 and 5, 1998, a nurse informed the plaintiff that she had no pain medication for him. (*Id.*) As it turned out, the medical unit had marked an incorrect housing unit for the plaintiff. (*Id.*) The plaintiff was given a lower (presumably non-prescription) dosage of Motrin for his pain. (*Id.*) The plaintiff's tier officer [Cuserrio, not a defendant] refused to contact the health care center to notify them of the plaintiff's correct housing assignment. (*Id.*) The plaintiff's blood pressure rose and he felt that he might pass out. (*Id.*, pp. 6-7.)

On several occasions, doctors have ordered that x-rays be taken to assess the condition of the plaintiff's spine. (Affidavit of Nathaniel Williams, Exhibit F-3 to plaintiff's brief opposing summary judgment, #1.) However, no such x-rays have ever been taken. (*Id.*)

On March 11, 1998, the plaintiff submitted a request to see the doctor again about his high blood pressure. (Complaint, p.7.) The plaintiff was experiencing headaches and dizziness. (*Id.*)

Because the plaintiff had not been seen by April 13, 1998, he asked his social worker for help. (*Id.*)

On or about April 13, 1998, the plaintiff saw Dr. Romine. (*Id.*) Romine prescribed a water pill, hydrochlorothiaze, for the plaintiff's blood pressure. (*Id.*) Romine informed the plaintiff that "they do not like to prescribe blood pressure

4

medications." (*Id.*) However, Romine did renew the plaintiff's prescription for pain medication. (*Id.*)

The plaintiff showed Romine the sores on his chest, back, legs and arm. (*Id.*) Romine directed a nurse to provide the plaintiff with an over-the-counter ointment, hydrocortisone cream; he also prescribed diphenhydramine to combat the itching. (*Id.*) Romine scheduled the plaintiff for lab tests on April 15, 1998. (*Id.*) Although the doctor told the plaintiff that his skin condition was caused by a fungus, a nurse disagreed with Romine and advised the plaintiff to consult a dermatologist. (*Id.*, pp. 7-7a.)

On April 15, 1998, an officer named Avent [not a defendant] notified the plaintiff that it was time for his appointment but that he did not "feel like" escorting him to the medical unit so the plaintiff would have to reschedule. (*Id.*, p. 7a.) The plaintiff filed multiple grievances but received no response. (*Id.*) The plaintiff also wrote a number of letters to the defendant Moore, superintendent of the plaintiff's housing unit, but Moore took no action. (*Id.*)

The plaintiff finally complained to a health care educator, who arranged for the plaintiff to go to the health care unit for lab work on May 13, 1998. (*Id.*, pp. 7a-7b.) Although lab tests have been performed seven to ten times since May 1998, the plaintiff's stool and urine samples have been lost every time "except maybe once." (Williams affidavit, #2.)

5

On May 20, 1998, the plaintiff showed Dr. Romine that his skin condition had deteriorated. (Complaint, p. 7b.) Romine continued to insist that the plaintiff had a fungus problem and refused to refer him to a dermatologist. (*Id.*)

On June 5, 1998, the plaintiff saw Dr. Romine again about his skin condition because new sores were appearing daily. (*Id.*) Romine prescribed antibiotics. (*Id.*)

The plaintiff wrote a letter to the defendant Manilla, the administrator of Cermak Hospital, requesting an appointment with a dermatologist. (*Id.*) Manilla did not respond to the plaintiff's letter. (*Id.*)

On June 27, 1998, the plaintiff finally saw a dermatologist [Meyer, not a defendant]. (*Id.*) After ordering a chest x-ray and studying the plaintiff's stool sample, Meyer concluded that the problem was not a fungus. (*Id.*, pp. 7b-7c.) Meyer has continued the same treatment plan as the defendant Romine (skin ointment and medication to stop the itching). (*Id.*, p. 7c; Williams affidavit, #3.)

As of the date the plaintiff filed suit (September 8, 1998), he had not been advised of the results of lab tests. (Complaint, p. 7c.) His various prescriptions had also lapsed, leaving the plaintiff without medication. (*Id.*) At the time he filed the complaint, the plaintiff's "entire body [was] covered with sores and permanent scars," he was "itch[ing] real bad all day," and sores were beginning to appear on his neck and face. (*Id.*, p. 7d.) Every morning the plaintiff was awakening to find his underclothing blood-stained. (*Id.*)

For the past two years, the health care staff has not monitored the plaintiff's blood pressure. (Williams affidavit, #4.)

Between April 3 and April 17, 1998, the plaintiff submitted five request slips to use the jail's law library, but his requests were ignored. (Complaint, p. 7e.) The plaintiff continued to submit requests until he was finally permitted to use the law library on April 23, 1998. (*Id.*) However, when the plaintiff arrived there, the defendant Lake informed the inmates that they had only fifteen minutes because the library was about to close. (*Id.*) The plaintiff used the law library at least ten more times during the months of April, May, June, and July. (*Id.*) The plaintiff contends that due to various delays in inmate movement, he is not given sufficient time to do the research necessary to complete legal work. (*Id.*, p. 7g.) The hour and a half allotted to inmates for each library visit is often reduced to forty-five minutes on account of the time spent in holding cells on the way to and from the library. (*Id.*, p. 7h.)

On July 23, 1998, the plaintiff asked an inmate law clerk to make photocopies of exhibits for him. (*Id.*, p. 7g.) The defendant Lake demanded to see the plaintiff's complaint first and read the exhibits and entire complaint before authorizing the copies. (*Id.*)

The defendants Moore and Manilla are aware of the plaintiff's problems because he has mailed them letters and filed grievances that required their review and signature.

7

## DISCUSSION

Summary judgment must be denied as to the plaintiff's various medical claims because the defendants have failed to establish that they are entitled to judgment as a matter of law. Although the court need not re-examine either the plaintiff's previously dismissed claim concerning infringement of his access to the law library, or the defendant Moore's personal involvement, the court remains persuaded that the plaintiff has failed to establish a triable claim against either Lake or Moore.

The parties' briefs do not support a finding in favor of either party on the plaintiff's medical claims. The defendants' sixteen-sentence statement of facts (six of which list the parties and the basis for jurisdiction) is completely unacceptable. The defendants provide several dates on which the plaintiff saw medical personnel but in no way indicate the treatment received. The defendants' statement of facts does not even mention the conditions for which the plaintiff has sought medical attention. Although the memorandum of law does touch on the facts, the legal discussion should not address factual matters not set forth in the statement of material facts.

The plaintiff's statement of facts, in turn, fails to provide citations to the record for many of the factual assertions he makes. The purpose of the court's Local Rule 56.1(3) requirement of a statement of facts is to assist the court in identifying the material facts,

and to point out the evidence in the record that supports any such factual representations. The statement of facts should not be a rote exercise.

The parties' general reference to the plaintiff's medical records, without any dates or page numbers, is likewise singularly unhelpful. The court need not "scour the record to make the case of a party who does nothing." *Sivard v. Pulaski County*, 959 F.2d 662, 662 (7th Cir. 1992). The court should not have to comb the record in order to piece together the sequence of events leading up to this lawsuit.

## I. Plaintiff's Medical Claims

The record will require further development concerning the plaintiff's various medical complaints. The Due Process Clause prohibits deliberate indifference to the medical needs of a pretrial detainee. *Chavez v. Cady*, 201 F.3d 901, 904-05 (7th Cir. 2000); *Salazar v. City of Chicago*, 940 F.2d 233, 237-38 (7th Cir. 1991). Inattention to medical needs amounts to a constitutional violation, however, only when the condition is "serious." *Brown v. Figel*, 950 F.2d 1285, 1289-92 (7th Cir. 1991). Moreover, a plaintiff must show that the indifference to his medical needs was substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991) (if the claim is merely medical malpractice, it should be brought in

state court). Deliberate indifference may be demonstrated by actual intent or by reckless disregard. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

A. The Plaintiff's Skin Condition

The defendants have failed to establish that they are entitled to summary judgment on the plaintiff's claim that he has been denied proper care for his skin condition, apparently some kind of chronic and severe rash. Although the plaintiff's medical records do reflect that the plaintiff has consulted both the defendant Romine and a dermatologist on various occasions, the records are mostly illegible. The mere fact that the plaintiff has seen doctors is immaterial if the health care staff has failed to provide constitutionally adequate treatment. The plaintiff contends both that he is seen only once every six months or so, and that he receives only "anti-itching" medication that barely relieves his symptoms and that do not attempt to remedy the actual condition itself. The court will require some explanation by a medical professional concerning what type of skin condition afflicts the plaintiff and what kind of treatment he is receiving.

It should be noted that, in order to prevail on a Fourteenth Amendment claim, the plaintiff must show that his skin condition is "serious." Under the Seventh Circuit's standard,

> A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . . [Indications of a serious medical need include] the existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Because the plaintiff

describes the presence of numerous open sores, bleeding, and a spreading of the problem,

the court will assume at this stage of these proceedings that the condition is serious.

In addition to seriousness, the plaintiff must show that the defendants acted with

deliberate indifference. A plaintiff can show that the professional disregarded a serious

medical need "only if the professional's subjective response was so inadequate that it

demonstrated an absence of professional judgment, that is, that no minimally competent

professional would have so responded under those circumstances." *Collignon v.*

*Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). Evidence that some medical

professionals would have chosen a different course of treatment might establish

negligence, but is insufficient to make out a constitutional claim. *Id.* A physician's

inability to effect a final cure is not proof of deliberate indifference. *Snipes v. DeTella*,

95 F.3d 586, 591 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997). As noted above, the

Constitution is not a vehicle for bringing claims for medical malpractice. *Bryant v.*

*Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

That a skin specialist appears to have largely continued the plaintiff's same

treatment plan tends to suggest that the defendant Romine was not deliberately

indifferent. *See, e.g., Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir.), *cert. denied*, 519 U.S.

897 (1996); *see also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997) ("liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment"). The plaintiff has a heavy burden in establishing that the defendant's treatment was so deficient as to rise to the level of a constitutional violation.

In responding to any renewed motion for summary judgment, the plaintiff is also cautioned that he must be absolutely truthful in any representations he makes to the court and must support any assertions of fact with the type of proof admissible under Fed. R. Civ. P. 56(e). Unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985).

The complaint contains several inherent inconsistencies and also conflicts with the plaintiff's summary judgment brief. For example, he charges in his brief that no scheduled tests have been performed; in his complaint, however, he refers to lab work completed on May 13, 1998. (*See* complaint, pp. 7a-7b.) He also indicates in his complaint (*see* p. 7b) that has been prescribed antibiotics for his skin condition, while in his summary judgment brief he contends that he has received only anti-itching medication. Contradictory (and unsupported) assertions of fact are insufficient to defeat summary judgment. *See, e.g., Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1152 n. 1 (7th

Cir. 1997); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985); *see also*

*Eckert v. Kemper Financial Services, Inc.*, No. 95 C 6831, 1998 WL 699656, *5 (N.D. Ill.

September 30, 1998). In fact, if the court determines that the plaintiff is attempting to

perpetrate a fraud on the court, such action could "lead to immediate termination of the

suit." *Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999).

B.  Blood Pressure

The plaintiff additionally asserts that he has gone without blood pressure

medication and that the health care staff has failed to monitor that condition. The

defendants' bare assertion that the plaintiff "sees medical personnel on a regular basis"

does not adequately address the plaintiff's claim.

Of course, if the plaintiff's health has not actually suffered, then he is not entitled

to damages. The Prison Litigation Reform Act requires an inmate to show some physical

injury in order to recover for mental or emotional anguish. *See* 42 U.S.C. § 1997e(e);

*Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997). The plaintiff is not entitled to

damages for what "might have" happened  but did not. *See, e.g., Slagel v. Shell Oil*

*Refinery*, 811 F.Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994)

(plaintiff could not recover damages for subjective, unrealized fears). Nevertheless, if the

denial of proper care for the plaintiff's blood pressure is ongoing, the plaintiff need not

wait for his health to deteriorate to obtain judicial relief. *Accord, Robinson v. Page*, 170

F.3d 747, 748 (7th Cir. 1999); *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

C.  Pain Medication

For the same reasons, summary judgment must be denied as to the plaintiff's claim that he has been denied needed pain medication.  It is questionable whether the plaintiff's need for pain medication some five years after surgery was "serious," but the record will require further development on that claim.  Again, the mere fact that the plaintiff is seen regularly in the health care unit does not address his claim that he has been denied needed pain medication.  The denial of pain medication, under certain circumstances, is actionable under 42 U.S.C. § 1983.  *Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999).

D.  Spinal Problems

The defendants' brief does not mention the plaintiff's purported back problems.  Any renewed motion for summary judgment must address the plaintiff's back or spine condition.

In any renewed motion for summary judgment, the defendants must also discuss the plaintiff's **current** medical care as well as his past treatment.  Although the plaintiff filed suit in 1998, he was complaining of purportedly ongoing problems.  The plaintiff is still confined at the Cook County Jail and alleges continuing dissatisfaction with the quality of his medical care.  The focus of this lawsuit is not just the time period between April 3, 1998, through September 8, 1998.

## II. Personal Involvement

The court questions whether the defendant Manilla had the requisite personal involvement to sustain a finding of liability. The plaintiff has alleged no facts establishing Manilla's direct, personal involvement, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor has the plaintiff shown that the alleged violations of his constitutional rights occurred at Manilla's direction or with his knowledge and consent. *Id.* "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted).

Manilla appears to be sued based solely on his position as administrator of the jail's health care unit. There is no indication that Manilla had any personal involvement in the provision of medical care to the plaintiff. But the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* Because the plaintiff was being seen by other medical staffers, the court discerns no basis for holding Manilla responsible for the allegedly deficient care. Complaint letters to Manilla are insufficient to establish personal involvement. *Accord, Volk v. Coler*, 638 F. Supp. 1540, 1549 (C.D. Ill. 1986), *aff'd* 845 F.2d 1422 (7th Cir. 1988). Furthermore, because Illinois' statutory grievance procedures

do not create a protected interest, *see Van Dyke v. Washington*, 896 F. Supp. 183, 188

(C.D. Ill. 1995); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982), inaction on the

plaintiff's grievances does not give rise to liability under Section 1983. In any renewed

motion for summary judgment, Dr. Manilla may wish to submit an affidavit indicating

what role, if any, he played in providing medical care to the plaintiff.

Also concerning personal involvement, the named defendants cannot, under the

circumstances of this case, be held liable for the actions of officers and health care

providers who are not parties to this action. There is no indication that any of the named

defendants was aware at the time that Officer Cuserrio refused to advise the health care

unit of the plaintiff's correct housing unit. By the same token, nothing in the record

suggests that the named defendants knew of and condoned the actions of the officer who

failed to take the plaintiff to the health care unit for a scheduled appointment. Any failure

to punish the officers after the fact is not actionable under Section 1983 since the

omission was not the cause of the plaintiff's injuries. *Accord, see Vukadinovich v.*

*McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990), *cert. denied*, 498 U.S. 1050 (1991). Nor

can Dr. Romine be held liable for any deficient treatment on the part of Dr. Meyer, a non-

defendant.

## III. Court Access

The parties continue to litigate the plaintiff's court access claim despite the fact

that that claim was already dismissed by Minute Order of December 11, 1998. Although

the court sees no reason to re-examine this issue, the court has reviewed the parties' briefs and remains persuaded that the plaintiff has no viable cause of action.

The parties agree that the Constitution guarantees prison inmates a right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Nevertheless, that right does not mean that inmates must be given unfettered access to law libraries. *Smith v. Shawnee Library System*, 60 F.3d 317, 323 (7th Cir. 1995). The right is limited to access to a law library sufficient to enable a plaintiff to research the law to determine what facts are necessary to state a cause of action. *Id.* at 322. Even "highly restrictive" procedures do not violate constitutional mandates if inmates still have meaningful access to the courts. *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir. 1987).

In the case at bar, the plaintiff does not dispute that he has been able to use the law library regularly; he maintains only that he is not given sufficient time to perform the necessary research. But an inmate cannot establish actual injury simply by showing that the prison's law library is "sub-par in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, the inmate must establish that the library's alleged shortcomings actually hindered his efforts to pursue a legal claim. *Id.*

A showing of actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Shango v. Jurich*, 965 F.2d 289, 293 (7th Cir. 1992); *Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990), *cert. denied*, 501 U.S. 1208

(1991). Such an allegation must be more than merely conclusory; a complaint is inadequate if it "offers no specific facts to support these allegations--no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." *Id.* Here, the plaintiff has failed to meet that burden.

The plaintiff asserts that he was found guilty of armed robbery in June of 1999, but he has not indicated what defense he was prevented from raising or how his limited access to the law library hindered his case. The plaintiff has likewise failed to show how his current criminal case has been prejudiced. The plaintiff, who is representing himself in his criminal case, declares that "without access to the law library, plaintiff cannot research or draw up motions," but he provides no specific instances where he has been unable to draft any necessary motion. Presumably, the plaintiff can obtain extensions of time, if necessary, or reconsider being represented by an attorney if he cannot meet the demands of his defense.

The plaintiff also notes that he has the instant civil case pending, but again he has failed to show how he has been impeded from pursuing his claims. To the contrary, the plaintiff appears to have had no difficulties litigating this case. His summary judgment brief is replete with case citations; moreover, the fact that the plaintiff has been able to press this lawsuit belies any inference that he has been denied meaningful access to the courts. *See Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998): "ability to litigate a

denial of access claim is evidence that the plaintiff has no denial of access claim." The plaintiff simply has not demonstrated any prejudice to a pending or contemplated civil or criminal case resulting from his limited time in the law library. The plaintiff's conclusory assertions are insufficient to survive summary judgment.

The plaintiff also charges that the defendant Lake read his legal materials and reported the prospective lawsuit to the intended defendants. If the plaintiff's account is true, Lake appears to have been motivated by more than the need to verify that the documents the plaintiff sought to copy were legal in nature. Nevertheless, while Lake's alleged actions are rather disturbing and unprofessional, she did not deter the plaintiff from filing this lawsuit and he reports no retaliation. It should be noted that "[w]ith minute and irrelevant exceptions," court documents are public records, "which prison personnel could if they want inspect in the court's files." *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (dicta). The court perceives no potential harm to the plaintiff's case in the defendants learning about this lawsuit before they were served with the summons and complaint. Consequently, the plaintiff has no triable case against the defendant Lake on his court access claim.

Finally, summary judgment is granted in favor of the defendants insofar as they are sued in their official capacities. An action for damages against a county agent in his or her official capacity is, in essence, an action against the municipality. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978);

*Brunken v. Lance*, 807 F.2d 1325, 1328 (7th Cir. 1986).  A governmental entity is liable in

an official-capacity suit under Section 1983 only when the entity is a "moving force

behind the deprivation, thus requiring the entity's policy or custom to have played a part

in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  In the

case at bar, the plaintiff's allegation that the health department's shortcomings are

widespread is insufficient to show the existence of any county custom or policy which

permitted or required the allegedly substandard medical care about which he complains.

The plaintiff may proceed against the defendants Romine and Manilla only to the extent

that they are sued in their individual capacities.

## CONCLUSION

In sum, the record is not sufficiently developed for resolution of the plaintiff's

medical claims.  If the defendants Romine and Manilla believe they are entitled to

judgment as a matter of law on the plaintiff's claim that they acted with deliberate

indifference to his serious medical needs, they must file a renewed motion for summary

judgment addressing the various deficiencies discussed in this order.  The plaintiff may

proceed on his medical claims, but only insofar as the defendants Romine and Manilla are

sued in their individual capacities.

IT IS THEREFORE ORDERED that the defendants' motion for summary

judgment [#31] is granted in part and denied in part.  Summary judgment is denied with

respect to the plaintiff's various medical claims, with leave to file a properly supported,

renewed motion for summary judgment. Summary judgment is granted in favor of the defendants only insofar as they are sued in their official, as well as individual, capacities.

IT IS FURTHER ORDERED that the plaintiff's responsive brief, which he styled as a "motion opposing summary judgment" [#37], is denied as moot.

IT IS FURTHER ORDERED that this case is set for status conference on Thursday, September 14, 2000, at 9:00 a.m. to discuss the possibility of settlement or, in the alternative, to set a deadline for any renewed motions for summary judgment.

ENTER:


_____

Wayne R. Andersen

United States District Judge


Dated: *September 5, 2000*